## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

———————————————————————————————————————

Muhammad Abdul-Ahad, Jamaal Ike and
Ishmael Lamin, individually and on behalf
of all others similarly situated,

                                                Civ. No.:_____

       Plaintiffs,

v.

Associated Courier, Inc. (d/b/a Street Fleet),

       Defendant.

———————————————————————————————————————

### PLAINTIFFS' COLLECTIVE AND CLASS ACTION COMPLAINT
———————————————————————————————————————

Muhammad Abdul-Ahad, Jamaal Ike and Ishmael Lamin ("Plaintiffs"), individually

and on behalf of other similarly situated couriers, bring this Complaint against Associated

Courier, Inc. (d/b/a Street Fleet) ("Defendant").

### PRELIMINARY STATEMENT

1.      This is a putative class and collective action brought by Plaintiffs on behalf of

themselves and all others similarly situated.  Plaintiffs, and others similarly situated, worked

for Defendant as couriers, or in similar titles, and were denied wages required by federal

and state wage and hour laws.

2.      Defendant misclassified Plaintiffs, and others similarly situated, as

independent contractors and failed to pay them one and one-half times their regular rate of

pay for all hours worked over 40 and 48 in a workweek as required by federal and state law.

3.     Plaintiffs seek overtime compensation for hours worked over 40 in a workweek pursuant to Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.  In accordance with § 216(b) of the FLSA, Plaintiffs bring this case as a putative collective action.

4.     Plaintiffs seek overtime compensation for hours worked over 48 in a workweek pursuant to the Minnesota Fair Labor Standards Act ("MFLSA"), Minn. Stat. § 177.21, *et seq*.  Plaintiffs bring these claims as a putative Rule 23 class action for all of Defendant's couriers.

5.     Plaintiff Ike brings an individual claim for retaliation in violation of the FLSA, 29 U.S.C. § 215(a)(3), the MFLSA, Minn. Stat. § 177.21, *et seq.*, and the Minnesota Whistleblower Act ("MWA"), Minn. Stat. § 181.932.  Defendant terminated Plaintiff Ike in response to his report to Defendant about courier job misclassification and unpaid wages.

6.     Plaintiff Abdul-Ahad brings an individual claim for retaliation in violation of the FLSA, 29 U.S.C. § 215(a)(3), the MFLSA, Minn. Stat. § 177.21, *et seq.*, the MWA, Minn. Stat. § 181.932, and the Minnesota Human Rights Act ("MHRA") Minn. Stat. § 363A.15. Plaintiff Abdul-Ahad reported to Defendant unpaid wages, misclassification of couriers and independent contractors, and race, national origin, and religious discrimination, and suffered adverse employment action by Defendant as a result.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.  Plaintiffs' claims arise under the FLSA, 29 U.S.C. 201 *et seq*.  Additionally,

this Court has personal jurisdiction over Defendant, since Defendant conducts business in the District of Minnesota.

8.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) as Defendant is domiciled in this District and under 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise the claims occurred in this District.

9.     This Court also has supplemental jurisdiction, pursuant to 29 U.S.C. § 1367, over the state law claims, as the state and federal claims derive from a common nucleus of operative fact.

## THE PARTIES

10.    Plaintiff Abdul-Ahad resides in Minneapolis, Minnesota.  He worked for Defendant in Minnesota as a courier of auto parts from approximately July 2019 through the present.

11.    Plaintiff Lamin resides in Champlin, Minnesota.  He worked for Defendant in Minnesota as a courier of paperwork from approximately 2013 to approximately mid-August 2019.

12.    Plaintiff Ike is a resident of Minneapolis, Minnesota.  He currently resides in Surprise, Arizona.  He worked for Defendant in Minnesota as a courier of auto parts, and on an occasion paperwork, from approximately October to December 16, 2019.

13.    Associated Courier Services, Inc. d/b/a Street Fleet is a domestic business corporation incorporated and registered to conduct business in Minnesota.  It is a courier company that provides delivery services to its customers throughout the state of Minnesota and neighboring states.

14.     Plaintiffs consent in writing to be parties to this FLSA action pursuant to 29 U.S.C. § 216(b).  Plaintiffs' Consent Forms are attached as Exhibit A.  As this case proceeds, it is likely other individuals will sign consent forms and join as plaintiffs.

## COVERAGE UNDER THE FLSA

15.     Upon information and belief, Defendant has an annual gross volume of sales made or business done of $500,000 or greater in accordance with 29 U.S.C. § 203(s)(1)(A)(ii).

16.     Plaintiffs are Defendant's employees within the meaning of the FLSA and were engaged in interstate commerce as defined by 29 U.S.C. § 207(a)(1).

17.     Defendant is a covered employer as defined by 29 U.S.C. § 203(d).

18.     Defendant has employed two or more persons, including Plaintiffs, who are or were "engaged in commerce or in the production of goods for commerce," or have had "employees handling, selling, or otherwise working on goods or materials that have been moved and/or produced for commerce by any person," as defined by 29 U.S.C. § 203(s)(1)(A)(i).

19.     Plaintiffs allege that Defendant's uniform practice of misclassifying couriers as independent contractors and paying no overtime premium for overtime hours worked, deprives Plaintiffs and those similarly situated of overtime compensation in violation of the FLSA.

## COLLECTIVE AND CLASS ACTION DEFINITIONS

20.     The group of similarly situated workers Plaintiffs seek to have certified under the FLSA, 29 U.S.C. § 216(b) as a collective action is defined as:

> All couriers who worked for Defendant at any time within three years prior to the filing of the Complaint through the present (the "FLSA Collective").

21.     The group of similarly situated workers Plaintiffs seek to have certified under Fed. R. Civ. P. 23(a) and 23(b) as a class action under the MFLSA is defined as:

> All couriers who worked for Defendant in Minnesota at any time within three years prior to the filing of the Complaint through the present (the "MN Rule 23 Class").

## GENERAL FACTUAL ALLEGATIONS

22.     Plaintiffs have worked for Defendant as couriers, making deliveries as dictated by Defendant.

23.     Defendant operates warehouses in at least three Minnesota locations, including the cities of Roseville, Mendota Heights, and Bloomington.

24.     Defendant misclassified Plaintiffs, and others similarly situated, as independent contractors.

25.     Plaintiffs Abdul-Ahad and Ike, and others similarly situated, worked on what Defendant refers to as the U.S. Auto Force contract delivering U.S. Auto Force auto parts from one or more of Defendant's warehouses to and from businesses in Minnesota and surrounding states.

26.     Plaintiffs Lamin and Ike, and others similarly situated, delivered paperwork to and from various establishments and one or more of Defendant's warehouses.

27.     Regardless of what they were delivering, Plaintiffs, and other couriers were similarly situated.

28.     Couriers made deliveries using their own personal vehicles, and/or vehicles they leased from Defendant.

29.     Plaintiffs, and those similarly situated, drove motor vehicles with a gross vehicle weight rating of 10,000 pounds or less to make deliveries.

30.     Defendant required its couriers to display a placard on the vehicles they drove reflecting Defendant's name.

31.     Defendant required its couriers to wear a uniform reflecting Defendant's name.

32.     Defendant required its couriers to carry an identification badge Defendant provided, reflecting they worked for Defendant.

33.     Defendant dictated to its couriers when to work and provided a route schedule they were required to follow for all deliveries.

34.     Defendant did not allow couriers to set their own schedule or choose which deliveries to make.

35.     Defendant did not allow couriers to take time off without requesting, and obtaining permission, from Defendant at least two weeks in advance.

36.     In addition to working during the week, Defendant required couriers to work on Saturdays.

37.     Plaintiffs, and others similarly situated, would start their deliveries by either arriving at Defendant's warehouse to load their vehicles, or, if delivering paperwork, showing up to their assigned customer site or Defendant's warehouse as instructed by Defendant.

38.    Plaintiffs, and others similarly situated, worked continuously throughout the day making deliveries as directed by Defendant.

39.    Defendant required its couriers to purchase an app managed by Defendant.

40.    The app provided the deliveries they were required to make and the times they were expected to make them.

41.    Defendant required its couriers to track every delivery made through the app.

42.    Defendant tracked its couriers through the app to ensure they were following and meeting the schedule it provided for their routes.

43.    Defendant routinely contacted couriers if they did not appear to be on schedule or where expected.

44.    For example, Defendant contacted Plaintiff Abdul-Ahad when he stopped to use the restroom while making deliveries to inquire why he stopped.

45.    Defendant routinely threatened couriers that they would lose their routes if they did not accept their assignments each morning.

46.    The daily routes Defendant assigned and expected couriers to complete routinely took more than eight hours, oftentimes taking Plaintiffs nine or more hours per day.

47.    Plaintiffs' workweeks have routinely ranged from 50 to 60 hours worked on average for Defendant.

48.    Plaintiff Abdul-Ahad routinely worked more than 40 and 48 hours in a workweek for Defendant.  For example, during the workweek beginning July 22, 2019, he worked five days, which resulted in approximately fifty 50 hours worked that workweek for

Defendant.  Defendant did not compensate him with an overtime premium during this workweek, or in any other workweeks.

49.     Plaintiff Lamin routinely worked more than 40 and 48 hours in a workweek for Defendant.  For example, during the workweek beginning July 15, 2019, he worked five approximately ten-hour days, which resulted in approximately 50 hours worked that workweek for Defendant.  Defendant did not compensate him with an overtime premium during this workweek, or in any other workweeks.

50.     Plaintiff Ike routinely worked more than 40 and 48 hours in a workweek for Defendant.  For example, during the week beginning November 18, 2019, he worked six approximately nine-hours days, which resulted in approximately 56 hours worked that workweek for Defendant.  Defendant did not compensate him with an overtime premium during this workweek, or in any other workweeks.

51.     Defendant required Plaintiffs to complete timesheets but did not pay them any overtime premiums.

52.     Defendant entered a contract with Plaintiffs Abdul-Ahad and Ike, and others similarly situated who made deliveries for Defendant's client, U.S. AutoForce, that provided Defendant would pay them a percentage of what Defendant received from U.S. AutoForce for the delivery, minus certain deductions that are not entirely clear.

53.     At the same time, Defendant routinely told Plaintiffs Abdul-Ahad and Ike that it was paying them on an hourly basis.

54.     Upon information and belief, Defendant denied Plaintiffs Abdul-Ahad and Ike, and others similarly situated, the amount they were owed under their contract, by

misrepresenting how much Defendant was receiving from U.S. AutoForce for the deliveries.

55.     Defendant paid Plaintiff Lamin, and others similarly situated, on a day rate basis.

56.     Defendant did not pay Plaintiffs, or others similarly situated, an overtime premium for any of the overtime hours they worked.

57.     Defendant is aware that its couriers routinely worked over 40 and/or 48 hours per week and were not paid overtime because Defendant scheduled them and required them to complete routes that often took more than eight hours per day.

58.     Defendant is aware of the hours its couriers worked because it required them to complete timesheets.

59.     Defendant is aware of the hours its couriers worked because it tracked when and where they were working through its app.

## FACTUAL ALLEGATIONS REGARDING REPORTS AND RETALIATION

60.     Plaintiffs Ike and Abdul-Ahad complained to Defendant regarding its misclassification of its couriers as independent contractors and about Defendant's failure to pay couriers properly for their hours worked.

61.     On multiple occasions in 2019, Plaintiff Ike asked Defendant's management team to explain how he, and other couriers were being paid and reported that he believed he was not being paid correctly.  He also reported to them that he believed he was misclassified as an independent contractor.

62.     On or about December 16, 2019, Plaintiff Ike met with Defendant's Director of Operations, Patrick Ferret, where he reported he believed couriers were misclassified as independent contractors and questioned whether he was being paid properly for all his time worked.  In that meeting, Mr. Ferret asked Plaintiff Ike for his keys and terminated him without cause.

63.     On several occasions, including in approximately each month between August 2019 and January 2020, Plaintiff Abdul-Ahad reported to Defendant's management team, including to Mr. Ferret, that he believed Defendant did not pay him and other couriers correctly.

64.     Furthermore, on multiple occasions during the same timeframe, Plaintiff Abdul-Ahad reported to Defendant a hostile and discriminatory work environment due to, for instance, racial, religious and national origin discrimination by Defendant's supervisors. For example, Plaintiff Abdul-Ahad reported that Defendant's manager Joel Gornick referred to African American couriers as "monkeys" and other couriers as "borders."  He also complained that when he opposed that treatment directly to Mr. Gornick, that Mr. Gornick retaliated against him by physically assaulting him.

65.     Mr. Gornick also prohibited couriers from praying, and from using the restroom, at Defendant's premises.

66.     Mr. Gornick referred to couriers not by name, but by their driver number.

67.     During a meeting with Plaintiff Abdul-Ahad, Mr. Gornick made a comment to the effect of, "we hire dumb immigrants because they do what we tell them to do."

68.    Defendant retaliated against Plaintiff Abdul-Ahad for his reports by, for example, reducing his pay, reducing his routes, and transferring him to another warehouse.

## COLLECTIVE ACTION ALLEGATIONS

69.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

70.     Pursuant to the FLSA, 29 U.S.C. § 216(b), Plaintiffs bring Count I individually and on behalf and all similarly situated individuals.

71.    Pursuant to the FLSA, 29 U.S.C. § 207, employers are generally required to pay overtime compensation for hours worked over forty (40) in a workweek.

72.    Defendant engaged in a pattern and practice of violating the FLSA, by failing to pay couriers overtime compensation as required by law.

73.    Defendant knowingly, willfully, or in reckless disregard of the law, maintained an illegal practice of failing to pay Plaintiffs and those similarly situated proper overtime compensation for all hours worked over forty (40).

## MINNESOTA RULE 23 CLASS ACTION ALLEGATIONS

74.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

75.    Pursuant to Fed. R. Civ. P. 23(a) and 23(b), Plaintiffs bring Count II individually and on behalf of the Minnesota Rule 23 Class for violations of the MFLSA.

76.    The persons in the Minnesota Rule 23 Class are so numerous that joinder of all members is impracticable.  While the precise number of class members has not been determined at this time, on information and belief, at least 50 individuals worked for

Defendant in Minnesota providing courier services during the applicable statute of limitations period. Plaintiffs and the proposed Minnesota Rule 23 Class have been equally affected by Defendant's violations of law.

77.    There are questions of law and fact common to the proposed Minnesota Rule 23 Class that predominate over and questions solely affecting individual members of the proposed Minnesota Rule 23 Class, including but not limited to the following:

      a.  Whether Defendant misclassified its couriers as independent contractors;

      b.  Whether Defendant violated Minnesota law for failing to pay overtime wages;

      c.  The proper measure and calculation of damages; and

      d.  Whether Defendant's actions were willful and/or in good faith.

78.    Plaintiffs' claims are typical of those members of the Minnesota Rule 23 Class. Plaintiffs, like other members of the proposed Minnesota Rule 23 Class, were subject to Defendant's practices and policies described in this Complaint. Further, Plaintiffs' job duties are typical of the Minnesota Rule 23 Class, as all class members are or were couriers.

79.    Plaintiffs will fairly and adequately protect the interest of the proposed Minnesota Rule 23 Class and have retained counsel experienced in complex wage and hour class and collective action litigation.

80.    This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members, and a class action is superior to other methods in order to ensure a fair an efficient adjudication of this controversy because, in the context of wage and hour

litigation, individual plaintiffs often lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants. Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to Defendant's policies and practices. There do not appear to be any difficulties in managing this class action.

81. Plaintiffs intend to send notice to all members of the proposed Minnesota Rule 23 Class to the extent required by Fed. R. Civ. P. 23.

**COUNT I – VIOLATION OF THE FAIR LABOR STANDARDS ACT FOR FAILURE TO PAY OVERTIME COMPENSATION**
**29 U.S.C. § 201, *et seq.***
***On Behalf of Plaintiffs and the FLSA Collective***

82. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

83. The FLSA, 29 U.S.C. § 207, requires employers to pay non-exempt employees an overtime premium for all hours worked over forty (40) per workweek.

84. Defendant suffered and permitted Plaintiffs and the FLSA Collective to routinely work more than forty (40) hours in a workweek without proper overtime compensation as required by the FLSA, 29 U.S.C. § 201 *et seq.*

85. Defendant knew or showed reckless disregard for the fact that it failed to pay these individuals overtime compensation, constituting a willful violation of the FLSA.

86. Defendant's failure to comply with the FLSA overtime protections caused Plaintiffs and the FLSA Collective to suffer loss of wages and interest thereon.

87.     Plaintiffs and the FLSA Collective are entitled to unpaid overtime, liquidated damages, and attorney's fees and costs under the FLSA.

## COUNT II – VIOLATION OF THE MINNESOTA FAIR LABOR STANDARDS ACT FOR FAILURE TO PAY OVERTIME COMPENSATION
### Minn. Stat. § 177.21, *et seq.*
### *On Behalf of Plaintiffs and the Proposed Minnesota Rule 23 Class*

88.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

89.     Plaintiffs and the proposed Minnesota Rule 23 Class were or are employees of Defendant within the meaning of the MFLSA, Minn. Stat. §§ 177.23 and 177.24.

90.     Defendant is or was the employer of Plaintiffs and the proposed Minnesota Rule 23 Class within the meaning of the MFLSA, Minn. Stat. § 177.23.

91.     The MFLSA, Minn. Stat. § 177.25, requires employers to pay non-exempt employees an overtime premium for all hours worked over forty-eight (48) per workweek.

92.     Defendant suffered and permitted Plaintiffs and Minnesota Rule 23 Class to routinely work more than forty-eight (48) hours in a workweek without proper overtime compensation as required by the MFLSA.

93.     Defendant knew or showed reckless disregard for the fact that it failed to pay these individuals overtime compensation, constituting a willful violation of the MFLSA.

94.     Defendant's failure to comply with the MFLSA overtime protections caused Plaintiffs and the Minnesota Rule 23 Class to suffer loss of wages and interest thereon.

95.    Pursuant to Minn. Stat. § 181.03, subd. 2, Plaintiffs and the proposed Minnesota Rule 23 Class are entitled to their wages and liquidated (double) damages as a result of Defendant's conduct.

96.    Pursuant to Minn. Stat. § 181.171, Plaintiffs and the proposed Minnesota Rule 23 Class are entitled to recover attorneys' fees and costs as a result of Defendant's conduct.

## COUNT III – VIOLATION OF THE FAIR LABOR STANDARDS ACT FOR RETALIATION
### 29 U.S.C. § 215(a)(3)
*On Behalf of Plaintiffs Abdul-Ahad and Ike Individually*

97.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

98.    Section 215(a)(3) of the FLSA makes it unlawful for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]."

99.    Plaintiffs Abdul-Ahad and Ike engaged in protected activity within the meaning of the FLSA by filing a complaint with Defendant under the FLSA.

100.    Plaintiffs Abdul-Ahad and Ike suffered adverse action upon engaging in this protected activity.

101.    Defendant retaliated against Plaintiffs Abdul-Ahad and Ike in violation of the FLSA, 29 U.S.C. § 215(a)(3) as a result of their reports.

102.    The foregoing conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255, without a good faith or reasonable basis.

103.    As a direct and proximate cause of Defendant's unlawful conduct, Plaintiffs Abdul-Ahad and Ike suffered a loss of income and benefits, emotional distress, and other damages.  Pursuant to 29 U.S.C. § 216(b), Plaintiffs Abdul-Ahad and Ike are entitled to all "such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) . . . including without limitation, employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages."  They are also entitled to attorney's fees and costs under the FLSA.

## COUNT IV – VIOLATION OF THE MINNESOTA FAIR LABOR STANDARDS ACT FOR RETALIATION
### Minn. Stat. § 181.03, *et seq.*
### *On Behalf of Plaintiffs Abdul-Ahad and Ike Individually*

104.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

105.    The MFLSA prohibits an employer from retaliating against an employee for asserting rights under the statute.  *See* Minn. Stat. § 181.03, subd. 6.

106.    Plaintiffs Abdul-Ahad and Ike were or are employees of Defendant within the meaning of the MFLSA, Minn. Stat. §§ 177.23 and 177.24.

107.    Defendant is or was the employer of Plaintiffs Abdul-Ahad and Ike within the meaning of the MFLSA, Minn. Stat. § 177.23.

108.    Plaintiffs Abdul-Ahad and Ike engaged in protected activity within the meaning of the MFLSA by asserting their rights under the MFSLA.

109.    Plaintiffs Abdul-Ahad and Ike suffered adverse action upon engaging in this protected activity.

110. Defendant retaliated against Plaintiffs Abdul-Ahad and Ike in violation of the MFLSA, Minn. Stat. § 181.03, subd. 6, as a result of their reports.

111. Defendant's actions were willful and not the result of mistake or inadvertence. Minn. Stat. § 541.07(5).

112. As a direct and proximate cause of Defendant's unlawful conduct, Plaintiffs Abdul-Ahad and Ike suffered a loss of income and benefits, emotional distress, and other damages. Plaintiffs Abdul-Ahad and Ike are entitled to all relief available at law, including but not limited to liquidated damages, and attorney's fees and costs.

### COUNT V – VIOLATION OF THE MINNESOTA WHISTLEBLOWER ACT FOR RETALIATION
**Minn. Stat. § 181.932, *et. seq.***
*On Behalf of Plaintiff Abdul-Ahad and Ike Individually*

113. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

114. The Minnesota Whistleblower Act ("MWA"), Minn. Stat. § 181.932, *et. seq.*, prohibits adverse action against an employee because he or she reported, in good faith, a violation or suspected violation of any federal or state or common law or rule adopted pursuant to law to an employer.

115. Plaintiffs Abdul-Ahad and Ike are Defendant's employees and Defendant is their employer. *See* Minn. Stat. § 181.931, subd. 2 and 3.

116. At all times relevant, Defendant employed, and continues to employ, one or more employees in Minnesota.

117.    During their employment, Plaintiffs Abdul-Ahad and Ike engaged in statutorily protected conduct by reporting, in good faith that they believed Defendant was violating the law due to, for instance, its classification of couriers as independent contractors, failure to pay overtime, and failure to pay wages owed.

118.    In addition, Plaintiff Abdul-Ahad engaged in statutorily protected conduct by reporting a hostile and discriminatory work environment based, for instance, on race, national origin, and religion.

119.    As a result of Plaintiff Abdul-Ahad's statutorily protected conduct, Defendant disciplined, threatened, penalized, and otherwise discriminated against him.

120.    As a result of Plaintiff Ike's statutorily protected conduct, Defendant engaged in adverse action that culminated in termination.

121.    Defendant committed the acts with malice, reckless disregard or deliberate disregard for Plaintiffs Abdul-Ahad's and Ike's rights.  As a result, Plaintiffs Adbul-Ahad and Ike are entitled to punitive damages.

122.    As a direct and proximate cause of Defendant's unlawful conduct, Plaintiffs Abdul-Ahad and Ike suffered a loss of income and benefits, emotional distress, and other damages.  Pursuant to Minn. Stat.§ 181.935(a), Plaintiffs Abdul-Ahad and Ike are entitled to "any and all damages recoverable at law, together with costs and disbursements, including reasonable attorney's fees, and may receive such injunctive and other equable relief as determined by the court."  They are also entitled to any relief deemed appropriate by the Court, "including but not limited to reinstatement, back pay, restoration of loss service credit, if appropriate, compensatory damages, and the expungement of any adverse

18

records of an employee who was the subject of the alleged acts of misconduct." Minn. Stat.

§ 181.935(c).

**COUNT VI – VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT
FOR REPRISAL**
**Minn. Stat. § 363A.01,** *et. seq.*
*On Behalf of Plaintiff Abdul-Ahad Individually*

123. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

124. The MHRA prohibits employers from engaging in reprisal against any person because that person opposed a practice forbidden under the MHRA or filed a charge or participated in any manner in an investigation, proceeding or hearing. Minn. Stat. § 363A.15.

125. Plaintiff Abdul-Ahad is Defendant's employee and Defendant is his employer, despite Defendant's incorrect classification of its couriers as independent contractors. *See* Minn. Stat. § 363A.03, subds. 15 & 16.

126. Reprisal under the MHRA "includes, but is not limited to, any form of intimidation, retaliation, or harassment," as well as to "depart from any customary employment practice; transfer or assign the individual to a lesser position in terms of wages, hours, job classification, job security, or other employment status." Minn. Stat. § 363A.15.

127. Plaintiff Abdul-Ahad opposed and/or reported practices forbidden under the MHRA, such as a hostile and discriminatory work environment based on race, national origin, and religion.

128.    As a result of Plaintiff Abdul-Ahad's statutorily protected conduct, Defendant disciplined, threatened, penalized, and otherwise discriminated against him.

129.    Defendant committed the acts with malice, reckless disregard or deliberate disregard for Plaintiff Abdul-Ahad's rights.  As a result, Plaintiff Abdul-Ahad is entitled to punitive damages.

130.    As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff Abdul-Ahad, suffered a loss of income and benefits, emotional distress, and other damages. Plaintiff Abdul-Ahad seeks any and all damages recoverable at law, including reasonable attorney's fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and the proposed FLSA Collective, and the proposed Minnesota Rule 23 Class, pray for relief as follows:

1.    Certification of a collective action under § 216(b) of the FLSA and a Fed. R. Civ. P. Rule 23 class action under the MFLSA;

2.    Judgment against Defendant for violating state and federal overtime law;

3.    Judgment against Defendant for an amount equal to Plaintiffs', the FLSA Collective's, and the Minnesota Rule 23 Class's overtime wages due and owing and liquidated damages;

4.    Judgment that Defendant's violations were willful and/or not in good faith;

5.    An award of any pre- and post-judgment interest;

6.    An award of reasonable attorneys' fees and costs;

7.      Leave to add additional plaintiffs and/or state law claims by motion, the filing of written consent forms, or any other method approved by the Court; and

8.      Such further relief as may be appropriate.

**WHEREFORE**, Plaintiff Abdul-Ahad individually prays for relief as follows:

1.      Judgment against Defendant for violation of the retaliation protections in the FLSA, MFLSA, MWA, and MHRA;

2.      Judgment against Defendant for loss of income, emotional distress, and other relief for retaliation;

3.      A finding that Defendant's actions were willful and/or not in good faith;

4.      An award of any pre- and post-judgment interest;

5.      An award of reasonable attorneys' fees and costs;

6.      An award of punitive damages; and

7.      Such further relief as may be appropriate.

**WHEREFORE**, Plaintiff Ike individually prays for relief as follows:

1.      Judgment against Defendant for violation of the retaliation protections in the FLSA, MFLSA, and MWA;

2.      Judgment against Defendant for loss of income, emotional distress, and other relief for retaliation;

3.      A finding that Defendant's actions were willful and/or not in good faith;

4.      An award of any pre- and post-judgment interest;

5.      An award of reasonable attorneys' fees and costs;

6.      An award of punitive damages; and

7.    Such further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Date:  February 26, 2020             By */s/ Michele R. Fisher*
                                     Michele R. Fisher, MN Bar No. 303069
                                     fisher@nka.com
                                     NICHOLS KASTER, PLLP
                                     4600 IDS Center, 80 S. 8th Street
                                     Minneapolis, Minnesota 55402
                                     Telephone: (612) 256-3200

                                     Joshua A. Newville
                                     newville@madialaw.com
                                     MADIA LAW LLC
                                     323 Washington Ave. N., Suite 200
                                     Minneapolis, MN 55401
                                     Telephone: (612) 349-2743

                                     ATTORNEYS FOR PLAINTIFFS